**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

SHEILA HOLT                                                                                           PLAINTIFF

v.                                         No. 4:09CV00818 JLH

U.S. BANK NATIONAL ASSOCIATION                                                 DEFENDANT

**OPINION AND ORDER**

Sheila Holt commenced this action against U.S. Bank National Association alleging age discrimination pursuant to the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and sex discrimination pursuant to the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq*. U.S. Bank has moved for summary judgment, which Holt opposes. For reasons that will be explained, the motion for summary judgment is granted.

**I.**

During the relevant time period, Holt worked as a branch manager and officer of U.S. Bank under the supervision of Mike Ferguson. She was familiar with U.S. Bank's Code of Ethics, which includes a policy prohibiting employees from "process[ing] or approv[ing] any transactions relating to their own personal accounts, the accounts of immediate family members (parent, spouse, common law spouse, domestic partner, child, sibling, and in-laws), or to accounts on which they may have a personal financial interest or on which they are an authorized signer." (Defs.' Mot. for S.J. Ex. 9, p.32.) In 2004, Holt received written copies of two documents: an Account Transaction Restriction Policy and an Employee Account Transaction Policy. Both documents stated that employees could not process or approve transactions on the accounts of immediate family members and that such

action could be grounds for termination. Holt signed the documents, indicating that she understood the policy.[1]

In violation of that policy, Holt approved the cashing of checks for her son Brian Thompson, who did not have a U.S. Bank account.[2] In December 2008, two checks drawn on one of Thompson's accounts were returned for insufficient funds. The first check, dated November 18, 2008, was made out to Dana Simanton in the amount of $751.02.[3] Holt approved the cashing of the check and directed the teller, Jennifer Smith, to cash it. The second check, dated December 11, 2008, was made out to Brian Thompson in the amount of $900.00. Holt also approved the cashing of that check and directed the teller, Amanda Davis, to cash it. At the time she approved the cashing of the $900 check, Holt knew that the $751.02 check had been or would be returned for insufficient funds.

Holt spoke with Shelley Clifft in the Audit Department at U.S. Bank and Operations Manager Sharon Ingram. Holt explained that she knew "these customers" who cashed the checks, and she assured Clifft and Ingram that she would take care of the situation and that U.S. Bank would not lose any money. Later, Clifft told Ingram that the customer was actually Holt's son. After thirty days passed in which Holt was unable to recover the money owed on the checks, Ingram instructed Holt

---

[1] Holt argues that she understood the policy to prohibit cashing a check for an immediate family member—not approving a check for cashing. The Account Transaction Restriction Policy clearly states, however, that "[e]mployees are not allowed to process *or approve* transactions relating to [. . .] the accounts of family members." (Defs.' Mot. for S.J. Ex. 12 (emphasis added).)

[2] Pursuant to bank policy, when checks are cashed for a non-account holder, they must be approved.

[3] Ms. Simanton was an employee of Thompson who did not have a bank account.

to complete two miscellaneous loss forms for the checks, which she did. In the space labeled "Name of Employee Charged with Loss," Holt put "Jennifer Smith" on one form and "Amanda Davis" on the other. Sometime later, Thompson made restitution on the checks.

Ferguson, Holt's supervisor, conducted an investigation into the situation along with Human Resources Generalist Janet Davis. Ferguson interviewed Jennifer Smith, Amanda Davis, and another teller, Rachel Garner. Janet Davis contacted Human Resources Manager Meaghan Connor, who informed her that no exceptions to termination had ever been made for an employee who had approved a transaction for a family member. According to Connor, since September 2006, forty-eight employees in the Southeast Community Banking Division, including Holt, have been terminated for violating the Account Transaction Restriction Policy. Of those terminated, thirteen employees were over age forty when terminated, thirty-five were under forty, eight were male, and forty were female. On Friday, February 6, 2009, Ferguson called Holt into his office and questioned her about the approval and cashing of Thompson's checks. She admitted that she had approved the cashing of the checks. On February 10, 2009, Ferguson terminated Holt's employment for her violations of the Code of Ethics prohibition against approving a transaction for an immediate family member.

## II.

U.S. Bank is entitled to summary judgment on both of Holt's claims. A court should enter summary judgment when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986). When, as here, a nonmoving party cannot make an adequate showing on a necessary element of the case on which that party bears the

burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Holt has made claims alleging age discrimination pursuant to the ADEA and sex discrimination pursuant to the ACRA. However, she has failed to establish a *prima facie* case of discrimination for either claim.

The ADEA makes it unlawful for an employer to discharge an employee "because of such individual's age." 29 U.S.C. § 623(a) (2010). Historically, courts applied the same analysis to ADEA disparate-treatment claims as they did to Title VII claims. *See Gross v. FBL Fin. Servs., Inc.*, 526 F.3d 356, 359 (8th Cir. 2008) ("Given the similarity of language between Title VII and the ADEA, we have applied [the same burdens of production and persuasion that apply in Title VII claims] to our analysis of claims under the ADEA."), *overruled by Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009). In 2009, the Supreme Court held that the framework established in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S. Ct. 1775, 104 L. Ed. 2d 268 (1989), that shifts the burden of persuasion in Title VII claims does not apply to ADEA claims; rather, under the ADA "the plaintiff retains the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." *Gross*, 129 S. Ct. 2343, 2351. The Court, however, did not determine whether the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973), which is used in Title VII claims to shift the burden of production, still applies to ADEA claims. *Baker v. Silver Oak Senior Living Mgmt. Co.*, 581 F.3d 684, 688 (8th Cir. 2009).[4]

---

[4] U.S. Bank argues that the *McDonnell Douglas* framework is no longer applicable to ADEA claims and that because Holt fails to present evidence that her age was a "but-for" cause of her termination, and instead alleges that both her age *and* gender were motivating factors in the decision pursuant to *McDonnell Douglas*, Holt's ADEA claim fails as a matter of law.

Although neither the Supreme Court nor the Eighth Circuit have determined whether, in light of *Gross*, the *McDonnell Douglas* framework is applicable in the ADEA context, other circuit courts and district courts within the Eighth Circuit have determined that it is. *See Jones v. Okla. City Pub. Schools*, No. 09-6108, 2010 WL 3310226, at *4 (10th Cir. Aug. 24, 2010); *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010); *Smith v. City of Allentown*, 589 F.3d 684, 690-91 (3d Cir. 2009); *Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 447 n.2 (1st Cir. 2009); *Geiger v. Tower Auto.*, 579 F.3d 614, 622 (6th Cir. 2009); *Rahlf v. Mo-Tech Corp., Inc.*, No. 08-4846, 2009 WL 5033955, at *2 (D. Minn. Dec. 15, 2009); *Schott v. Care Initiatives*, No. 08-4068, 2009 WL 3297290, at *5 (N.D. Iowa Oct.15, 2009); *Kolar v. Chamness Tech., Inc.*, No. 08-3244, 2009 WL 3157376, at **2-3 (D. Neb. Sept. 28, 2009); *Roberts v. USCC Payroll Corp.*, 635 F. Supp. 2d 948, 962 n.2 (N.D. Iowa 2009); *Woehl v. Hy-Vee, Inc.*, 637 F. Supp. 2d 645, 651 (S.D. Iowa 2009); *see also Bodkin v. Town of Strasburg*, No. 09-2167, 2010 WL 2640461, at *2 (4th Cir. June 29, 2010) (applying *McDonnell Douglas* without discussion of *Gross*); *Martino v. MCI Commc'ns Servs., Inc.*, 574 F.3d 447, 452 (7th Cir. 2009) (same). *But see Clark v. Matthews Int'l Corp.*, No. 07-2027, 2009 WL 3680771, at *12 (E.D. Mo. Oct. 30, 2009) (applying *Gross*'s "but-for" standard to plaintiff's ADEA-RIF disparate treatment claim); *McFadden v. Krause*, 357 F. App'x 17, 19 (9th Cir. 2009) (determining that Title VII's burden-shifting framework does not apply in ADEA cases because Title VII recognizes mixed motive cases and the ADEA does not). As the Tenth Circuit has reasoned,

> the rule articulated in *Gross* has no logical effect on the application of *McDonnell Douglas* to age discrimination claims. *Gross* held that "the burden of persuasion [n]ever shifts to the party defending an alleged mixed-motives discrimination claim brought under the ADEA." 129 S. Ct. at 2348. *McDonnell Douglas*, however, does not shift the burden of persuasion from the plaintiff to the defendant. Rather, it shifts

5

> only the burden of production. *Doebele v. Sprint/United Mgmt. Co.*, 342 F.3d 1117, 1135 (10th Cir. 2003). Throughout the three-step process, "[t]he plaintiff . . . carries the full burden of persuasion to show that the defendant discriminated on [an] illegal basis." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1125 (10th Cir. 2005).
>
> Although we recognize that *Gross* created some uncertainty regarding burden-shifting in the ADEA context, we conclude that it does not preclude our continued application of *McDonnell Douglas* to ADEA claims.

*Jones*, 2010 WL 3310226, at *5.

Applying the *McDonnell Douglas* framework to the facts of this case, Holt has failed to establish a *prima facie* case of age or sex discrimination.[5] *See McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009) ("Under *McDonnell Douglas*, the plaintiff first must establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, then the burden of production shifts to the defendant . . . ."). To establish a *prima facie* case of discrimination, Holt must show that she: (1) is a member of a protected class; (2) was terminated; (3) was meeting her employer's reasonable expectations at the time of her termination; and (4) has facts that give rise to an inference of discrimination. *See Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008) (establishing factors for age discrimination); *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 874 (8th Cir. 2007) (establishing factors for sex discrimination).

Assuming that Holt has established the first three elements of her *prima facie* case,[6] Holt still fails to present facts that give rise to an inference of discrimination. Holt first argues that she was treated differently than other similarly situated employees outside of her protected class. In order

---

[5] Claims under ACRA are also analyzed using the *McDonnell Douglas* framework. *See Crone v. UPS*, 301 F.3d 942, 944 (8th Cir. 2002).

[6] The parties did not brief the issue of whether Holt's violation of policy means that she cannot meet the third element of a *prima facie* case, so the Court will not address that issue.

for an employee to be "similarly situated," the employee must be "involved in or accused of the same or similar conduct" and be disciplined differently than the plaintiff. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 852 (8th Cir. 2005) (finding two employees similarly situated because they violated the same bank policy and were disciplined differently). Holt alleges that Michael Shelley, the U.S. Bank Region President, violated the same bank policy that she violated and was not terminated. However, Holt can point to no evidence that would support that allegation other than her deposition testimony in which she alleged that she overheard a phone conversation between Shelley and someone at a U.S. Bank branch in which he asked the branch to "take care of" a relative of his. Shelley testified that he never approved the cashing of a check for a family member. His testimony on that point is undisputed. Holt's testimony that Shelley asked a bank employee to "take care of" a relative does not show that Shelley violated a bank policy, and it cannot defeat U.S. Bank's properly supported motion for summary judgment. *See Roeben v. BG Excelsior Ltd. P'ship*, 545 F.3d 639, 642 (8th Cir. 2008) ("To survive summary judgment, a plaintiff must substantiate his allegations with enough probative evidence to support a finding in his favor."). Holt also argues that "younger individuals at the branch" who failed to report Holt's violation, as well as another employee who came to work intoxicated on one occasion, are similarly situated to Holt. However, failing to report a Code of Ethics violation committed by one's supervisor and repeatedly authorizing the cashing of checks for a family member are not "the same or similar conduct." *See Rodgers*, 417 F.3d at 852. Nor is coming to work intoxicated. Even under the *McDonnell Douglas* framework, the plaintiff cannot meet her evidentiary burden of establishing a *prima facie* case of discrimination.

**CONCLUSION**

For the reasons listed above, U.S. Bank's motion for summary judgment is GRANTED. Document #18. Sheila Holt's complaint is dismissed with prejudice.[7]

IT IS SO ORDERED this 8th day of September, 2010.

                                      */s/ J. Leon Holmes*
                                      J. LEON HOLMES
                                      UNITED STATES DISTRICT JUDGE

---

[7] The parties obtained a protective order to file certain documents under seal. *See* Document # 13. The protective order defines as "confidential information," which may be sealed,

> Those personnel files, medical reports, job descriptions, rates of pay policies, benefits information, financial information, proprietary information, bank account information, trade secrets, and other matters . . . relating to the operation and organization of Defendant.

*Id.* The parties have proceeded to file under seal every document that pertains to summary judgment, including the motion, response, corresponding briefs, and all exhibits. Most of these documents do not contain "confidential information" and should be made available to the public. The parties must designate in writing by September 20, 2010, the documents that contain confidential information. The Clerk will be ordered to unseal all other documents after that date.